UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Kris Brown

    Plaintiff,

v.                                    Case No.: 18 CV 80026

Geogroup, Inc.,

et als.,

    Defendants.

_____ /

## SECOND AMENDED COMPLAINT

Plaintiff Kris Brown files this Second Amended Complaint:

## I. JURISDICTION

1. Mr. Brown brings this suit under 42 U.S.C. 1983, as amended, and jurisdiction lies pursuant to 28 U.S.C. 1331 and 1343 (3), as amended, and the Eighth and Fourteen Amendments of the United States Constitution. This Honorable Court's jurisdiction over state law claims is invoked pursuant to the doctrine of pendent or supplemental jurisdiction.

2. Kris Brown invokes the Court's pendent jurisdiction as to Florida common law as to the third party beneficiary claim.

3. The proper venue for this case lies in this Court, as Mr. Brown is a resident of Florida, as is co-defendant White, Geo Group (GEO) does business in Florida, and the causes of action substantially arose in the Southern District of Florida.

II. PARTIES

1. Plaintiff Kris Brown is of legal age and a resident of Florida. At all times relevant to the instant Complaint, Mr. Brown was an individual protected by the laws invoked in this Complaint.

2. Geo Group, Inc. has its principal place of business in Florida. At all times relevant to this Complaint, this defendant acted under color of state law.

3. Defendant, Don Stine is resident of Kentucky, and he acted under color of state law.

4. Defendant Oscar White is a resident of Florida, and he acted under color of state law.

5. Defendants John Doe, and Jane Doe are persons responsible for the acts and damages alleged in the instant case whose identities are unknown at this moment.

6. On information and belief Corporation XYZ contracts with GEO and/or the State of Florida to provide medical and/or mental to Florida prisoners.

7. All defendants are sued in their individual and official capacities.

III. FACTS

1. On August 1, 2015, Kris Brown was incarcerated at South Bay Correctional Facility, which is operated by Geo Group, Inc. pursuant to a contract with the Florida Department of Corrections.

2. Geo Group does not provide sensitivity training for its inmates and guards about the special challenges of being a homosexual inmate.

3. Gay bashing occurs frequently at the South Bay Correctional Facility, and the defendants have done nothing to correct it. The defendants' failures in this regard in combination with the inadequate staffing led to Mr. Brown's assault and injuries in this case.

4. Mr. Brown was in the recreational yard at about 8:00 am on August 1, 2015 at South Bay Correctional Facility during the first and into the second recreational period.

5. Mr. Brown had been to see a nurse at the facility because he had a cold. He received treatment for his symptoms.

6. The nurse advised Mr. Brown that he should try to go to the recreation yard, so that he could get some fresh air.

7. As instructed, Mr. Brown went to the yard, where there was a basketball game being played.

8. Mr. Brown sat down on the second to the last bleacher and began to watch the game.

9. Another inmate, whose name Mr. Brown does not remember, but who is willing to sign a witness statement, sat with Mr. Brown to watch the game.

10. Like Mr. Brown, the second inmate is homosexual.

11. As the two inmates watched the game, the second inmate told Mr. Brown that a mutual friend of theirs named Denny moved from E dorm to a different dorm.

12. While the second inmate was explaining the reasons for the move to Mr. Brown, Christian Walden, an inmate, who was sitting two bleachers above Mr. Brown and his friend began to rant about the two of them being homosexuals, saying that they needed to go on the track with "that gay shit, all that kissing, and fag shit."

13. Mr. Brown looked around to see to whom Mr. Walden was referring because neither Brown nor his friend were kissing anyone.

14. Mr. Brown and his friend continued their conversation.

15. In the background, Mr. Walden continued to repeat his homophobic remarks about "gay shit," "all that kissing," and "fag shit."

16. Mr. Brown looked around to see if there were any correctional officers around and there was only one officer, Officer White, a tall black man who was working the yard all by himself.

17. At the time, all the inmates from dorms C, D, E, and G were in the recreation yard at the same time.

18. Each dorm has approximately 200 inmates.

19. According to the contract between Geo Group and the Florida Department of Corrections that Mr. Brown has been able to access at this time, each of those dorms was required to have at least one correctional officer in the control and two "roving" correctional officers.

20. Thus, there should have been at least one officer from each dorm to supervise the potential of 800 inmates in the recreation yard.

21. At the time that Mr. Walden was verbally harassing Mr. Brown and his friend, C.O. White was the only correctional officer in the recreation yard.

22. Officer White was engaged in conversations with certain inmates, thereby leaving other inmates completely unsupervised.

23. Other officers only entered the recreation yard after Mr. Brown was assaulted.

24. Mr. Brown continued to converse with his homosexual friend, and Mr. Walden continued with his rant about how much he hated homosexuals.

25. Mr. Brown asked Mr. Walden to whom was he referring, given that he and his friend were not kissing.

26. Mr. Walden then spat in Mr. Brown's face.

27. Next, Mr. Walden and a few other inmates began to attack and assault Mr. Brown.

28. Mr. Brown tried to defend himself, and other inmates joined the attack.

29. Mr. Brown felt sharp pains in his face, and someone knocked him unconscious.

30. Mr. Brown remembers waking up on his own without any Geo officers present, with everyone who had attacked him gone.

31. Mr. Brown was bleeding profusely from the face. He could not control the bleeding.

32. At that point, an officer approached Mr. Brown and placed him in a wheel chair, and someone took him to get medical care.

33. Mr. Brown's injuries were severe.

34. He sustained a total of four stab/puncture wounds in the face as well as fractures in his orbital socket and abrasions on his forehead.

35. Mr. Brown had difficulty seeing from his left eye. He later learned that his retina had been detached during the attack.

36. Mr. Brown was hospitalized for four days after the attack.

37. Mr. Brown was transported to the hospital in a non-medical vehicle because GEO did not have an ambulance and did not call one. This lack of a medically equipped vehicle delayed Mr. Brown's treatment and recovery.

38. One of the nurses who treated Mr. Brown said that his injuries were severe enough that she could see his teeth from the front of his face.

39. Mr. Brown was given mug shots from the recreation yard surveillance camera, and he positively identified both inmates Walden, and another inmate, Mr. Byrd.

40. Mr. Brown has filed several grievances about this matter, without receiving any reply.

41. Mr. Brown was subsequently transferred to Martin Correctional Facility, from which he continued to avail himself of South Bay's grievance process, without success.

42. Mr. Brown also filed grievances about the attack at Martin Correctional Facility, but he did not get a response to those grievances either.

43. In addition to the grievances, Mr. Brown asked staff in the classification office for assistance, but did not receive any. In particular, Mr. Brown asked Ms. Brown at South Bay Correctional Facility and Ms. Burns, Mrs. Morris, and Ms. Jean Charles at Martin Correctional Facility in the classification area for assistance, but received none.

44. Mr. Brown continued to have pain for months; the retina is still detached; and it leaks gel, which appears milky.

45. Mr. Brown is afraid to participate in recreation or be around large groups of people.

46. His depression has worsened, as has his anxiety.

47. Mr. Brown has constant nightmares about the attack, and it continues to cause him trauma daily.

48. Inmates Byrd and Walden have admitted attacking Mr. Brown, but, to his knowledge, they have not been disciplined.

49. On information and belief, Defendants were uninterested in pursuing Mr. Brown's complaints because they do not perceive gay bashing as a serious offense. As a result, Geo Group conducted a superficial investigation, which it closed without doing any real investigation.

IV. DEFENDANTS' LIABILITY

1. Officer White's failure to supervise the recreational yard effectively caused Mr. Brown to be attacked for an extended amount of time without assistance, which led to the injuries Mr. Brown suffered.

2. Warden Stine's failure to staff the South Bay Correctional Facility adequately caused Mr. Brown to be attacked for an extended amount of time without assistance, which led to the injuries Mr. Brown suffered.

3. Geo Group's failure to provide instruction to its staff and the inmates at South Bay Correctional Facility as to the need to provide equal protection to all inmates led to a pervasive anti homosexual atmosphere at the facility.

4. Geo Group's failure to investigate Mr. Brown's assault seriously reflects the corporation's discriminatory actions against homosexuals. If a heterosexual inmate had suffered equivalent injuries, Geo Group would have taken them seriously.

5. On information and belief, Geo Group failed to comply with the staffing standards of the American Correctional Association, as required by Geo Group's contract with the Florida Department of Corrections.

6. Geo Group also failed to comply with the specific staffing requirements in its contract with the Florida Department of Corrections, which are, on information and belief, two roving correctional officers per dorm and one officer in the tower.

7. Geo Group's breach of its contract with the Florida Department of Corrections was the proximate cause of the prolonged attack Mr. Brown suffered.

## V. IRREPABLE INJURY

Although he is entitled to damages, Mr. Brown has no adequate remedy at law, and he will be irreparably injured if he is not granted injunctive relief for the constitutional violations described herein. The public interest also favors an injunction to remedy constitutional violations.

## VI. CAUSES OF ACTION

Repeating the above allegations as if set forth again in full, Defendants are liable jointly and severally for acting under color of state law to violate Plaintiff's rights.

I.  Under the Eighth Amendment to the United States Constitution for deliberate indifference to his serious health care needs;

II. Under the Eighth Amendment to the United States Constitution for deliberate indifference to his serious need for safety and protection;

III. Under the Fourteenth Amendment to the United States Constitution, for violation of his right to Equal Protection of the Law.

In addition, Plaintiff alleges under Florida law:

I.  Negligence;

II. Infliction of Emotional Distress;

III. Breach of Contract

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. A declaratory judgment that Defendants have violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution and Florida law.

B. A permanent injunction directing those Defendants responsible for his current and future health care, safety, and equal protection, to conform their conduct to the Eighth and Fourteenth Amendments to the United States Constitution.

C. An award of damages for Plaintiff's pain and suffering for physical and emotional injury arising from Defendants' failure to protect him from harm and their indeliberate indifference to his serious health needs after the assault;

D. An award of damages (including nominal damages) for violation of his constitutional rights;

E. An award of punitive damages for deliberate violation of his constitutional rights;

F. Compensatory damages for negligence

G. Punitive damages for infliction of emotional distress;

H. Compensatory damages for breach of contract;

I. An award of his costs and reasonable attorneys' fees;

A. Such other relief as the Court deems appropriate.

Date: July, 2020                    Respectfully submitted,

/s/Jane Becker Whitaker
Becker Vissepó
1225 Ponce de Leon, Suite 1102, VIG Tower
San Juan, PR 00907
Tel. 787 945-2406
Tel. 787 585-3824
jbw@beckervissepo.com

/s/Stephen Binhak
The Law Office of Stephen James Binhak, P.L.L.C.
1221 Brickell Ave., Suite 2010
Miami, Florida 33131
(305) 361-5500
(305) 428-9532 fax
binhaks@binhaklaw.com