UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80026-CV-ROSENBERG
MAGISTRATE JUDGE REID

KRIS K. BROWN,

      Plaintiff,

v.

THE GEO GROUP, INC., et al.

      Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

This cause is before the Court on Defendants' Geo Group Inc.'s ("GEO Group"), Warden Don Stine's ("Warden Stine") and Correctional Officer Oscar White's ("Officer White") Motion for Summary Judgment [ECF No. 123], and accompanying Statement of Material Facts [ECF No. 122]. Plaintiff has filed an Amended Statement of Facts in Opposition [ECF No. 187] and an Amended Memorandum of Law in Opposition [ECF No. 184], and Defendants have filed an Amended Reply [ECF No. 193].

The matter is now ripe for review and has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Admin. Order 2019-2. [ECF No. 22]. After carefully considering the pleadings and the record in this case, for the reasons set forth below, the Undersigned **RECOMMENDS** that the Motion for Summary Judgment [ECF No. 123] be **GRANTED** as to Plaintiff's federal claims, and that Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court.

1

## I. Introduction

On August 1, 2015, Plaintiff Kris Brown was attacked by several inmates while in recreation yard #2 at South Bay Correctional Facility ("SBCF"). He filed a complaint for damages under 42 U.S.C. § 1983 against the Defendants, and additional claims for negligence, intentional infliction of emotional distress, and breach of contract. [*See Third Amend. Compl.*, ECF No. 57].[1] Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."

Prior to this summary judgment motion, the Court granted and denied in part Defendants' motions to dismiss. *See* [*Report*, Oct. 20, 2020, ECF No. 96]; [*Order Adopting*, Jan. 29, 2021, ECF No. 113]. What remains is Plaintiff's: (A) § 1983 claim for Deliberate Indifference to his safety and protection under the Eighth Amendment against Correctional Officer White, in his individual capacity, Warden Stine, in his individual and official capacity, and GEO Group, the private contractor operating SBCF (Count II); (B) § 1983 claim for Violation of the Equal Protection Clause of the Fourteenth Amendment against GEO Group (Count III); and (C) state law claims for Negligence (Count I) and Intentional Infliction of Emotional Distress (Count II) against all Defendants. *See* [ECF Nos. 96; 112]. Defendants argue that they are entitled to summary judgment on all remaining counts. *See* [ECF No. 123].

In Brown's complaint, he described the series of events that led to the attack. [ECF No. 57]. The incident started with homophobic comments made to him by an inmate while he and other inmates were seated on the bleachers in a prison recreation yard watching others play basketball. [*Id.*]. The comments escalated into a fight where Brown was attacked, sustaining several puncture wounds to his face, a fractured eye socket, and abrasions. [*Id.* at 5]. He did not know the name of

---

[1] The operative complaint, titled "Second Amended Complaint" [ECF No. 57], was in actuality, Plaintiff's Third Amended Complaint. Therefore, the court will refer to the operative complaint as the "Third Amended Complaint."

his assailants until prison authorities later showed him a photo array. [ECF No. 185-8, ¶ 5]. Brown describes an attack that was unprovoked, unfolded rapidly, and occurred with little warning.

## II. Plaintiff's Failure to Comply with Local Rules

Defendants correctly note that Plaintiff's Amended Statement in Opposition to Defendants' Statement of Material Facts in Support of their Motions for Summary Judgment ("Amended Facts in Opposition") violates S.D. Fla. Loc. R. 56.1(b)(1)(A), and that Plaintiff's Amended Memorandum of Law in Opposition to Summary Judgment ("Amended Response") violates S.D. Fla. Loc. R. 7.1(c)(2). [ECF No. 193 at 2]. On July 21, 2021, the Court struck Plaintiff's Declaration from his Attorney, Jane Becker, Notice of Filing, and exhibits for failure to comply with the Local Rules and allowed Plaintiff an opportunity to re-file his facts in opposition and memorandum of law to comply with the Local Rules. [*Order*, July 21, 2021, ECF No. 176].

Nevertheless, Plaintiff's amended pleadings once again do not comply with the Local Rules. S.D. Fla. Loc. R. 56.1(b)(1)(A) requires that all Statement of Material Facts, whether filed by the movant or opponent, shall not exceed ten pages, and S.D. Fla. Loc. R. 7.1(c)(2) requires that all opposing memoranda of law not exceed twenty pages. Plaintiff's Amended Facts in Opposition is thirty-one pages, and the Amended Response is thirty-seven pages. [ECF No. 193 at 2]. Further, Plaintiff uses his Amended Facts in Opposition to incorporate additional argument in support of his Amended Response.

Defendants request that the Court strike any portion of Plaintiff's pleadings that fails to comply with the Local Rules, deem Defendants' statements admitted or disputed, or grant relief in their favor. [ECF No. 193 at 3]. The Local Rules certainly provide support for that remedy. *See* S.D. Fla. Loc. R. 56.1(d). The Court has considered Defendants' request; however, given the serious nature of Plaintiff's claims and the extensive work done by both parties in researching and

arguing this case, the Undersigned will consider Plaintiff's pleadings in their entirety and conduct a thorough legal analysis to resolve this case on the merits.

### III. Undisputed Facts

A review of Defendants' Statement of Material Facts in Support of their Motion for Summary Judgment ("Defendants Statement of Facts") [ECF No. 122] and Plaintiff's Amended Facts in Opposition [ECF No. 187], establish that the following facts are undisputed.

SBCF is operated by GEO Group, pursuant to a contract with the Florida Department of Management Services ("FDMS"). [ECF Nos. 122 ¶ 2; 187 ¶ 2]; [*Hamilton Aff.* ¶ 4, Aug. 12, 2020, ECF No. 122-1].[2] Under GEO Group's contract with FDMS, GEO Group must comply with the rules and regulations promulgated by the Florida Department of Corrections ("FDOC"). [ECF Nos. 122 ¶ 3; 187 ¶ 3]; [*Hamilton Aff.* ¶ 4, ECF No. 122-1]. One of the requirements under the contract is proper staffing of the recreation yard. [ECF Nos. 122 ¶ 4; 187 ¶ 4]; [*Hamilton Aff.* ¶ 5, ECF No. 122-1]. There is a full-time contract monitor from FDMS stationed at SBCF and violations of the contract may result in fines and other penalties. [ECF Nos. 122 ¶ 4; 187 ¶ 4]; [*Hamilton Aff.* ¶ 6, ECF No. 122-1]. A copy of the contract between GEO Group and FDMS has been attached to Defendants' Statement of Material Facts. [ECF Nos. 122 ¶ 5; 187 ¶ 5]; [*Service Contract*, July 1, 2009, ECF Nos. 122-2, 122-3, 122-4].

As to the incident at issue, Plaintiff, an inmate at SBCF, was assaulted by other inmates while in the recreation yard on August 1, 2015, at approximately 3:00 p.m. [ECF Nos. 122 ¶¶ 1, 8; 187 ¶¶ 1, 8]. Warden Stine was not working at SBCF on the date of the incident.[3] [ECF Nos. 122 ¶ 9, 187 ¶ 9]; [*Stine Dep.* 35:20-24, Aug. 6, 2020, ECF No. 122-7]. Instead, Classifications

---

[2] William Hamilton has been employed by GEO Group since 2014 and is the current warden for SBCF. [*Hamilton Aff.* ¶ 2, ECF No. 122-1].

[3] Plaintiff claims that Warden Stine had responsibilities regardless of whether he was present. [ECF No. 187 ¶ 9].

Supervisor Willie Haslem ("Supervisor Haslem"), who is not a defendant, was the duty warden at SBCF on the date of the incident. [ECF Nos. 122 ¶ 10; 187 ¶ 10]; [*Haslem Aff.* ¶ 4, Aug. 12, 2020, ECF No. 122-6]. Part of Supervisor Haslem's responsibilities included submitting a duty warden log to Warden Stine, which informed Warden Stine of any significant events that occurred while he was not present. [ECF Nos. 122 ¶ 11; 187 ¶ 11]; [*Haslem Aff.* ¶ 6, ECF No. 122-6]. A copy of the duty warden log was produced during Warden Stine's deposition and is attached as an exhibit. [ECF Nos. 122 ¶¶ 11-12, 187 ¶¶ 11-12]; [*Duty Warden Log*, Aug. 3, 2015, ECF No. 122-8].

At SBCF, there are two separate recreation yards and Plaintiff was assaulted in recreation yard #2. [ECF Nos. 122 ¶ 13; 187 ¶ 13]; [*Haslem Aff.* ¶ 7, ECF No. 122-6]. There are four dormitories assigned to recreation yard #2, and these dormitories house a total of approximately 800 inmates. [ECF Nos. 122 ¶ 14, 187 ¶ 14]; [*White Dep.* 20:9-14, Aug. 6, 2020, ECF No. 122-9]. Inmates are not required to participate in recreation. [ECF Nos. 122 ¶ 15; 187 ¶ 15]; [*White Dep.* 19:1-23, ECF No. 122-9].

Officer White was a correctional officer on duty in recreation yard #2 at the time of the incident, but has no recollection of Plaintiff nor the incident, and is no longer employed at SBCF. [ECF Nos. 122 ¶ 21; 187 ¶ 21]; [*White* Dep. 15:16-16:1, ECF No. 122-9]. Plaintiff's incident report indicates that after the assault, while conducting a security check of recreation yard #2, Officer White observed Plaintiff injured on the ground.[4] [ECF Nos. 122 ¶ 22, 187 ¶ 22]; [*Haslem Aff.* ¶ 10, ECF No. 122-6]; [*Pl.'s MINS Incident Report*, Aug. 1, 2015, ECF No. 122-12 at 2]. Plaintiff was taken to the medical department, who determined that Plaintiff needed outside medical

---

[4] Plaintiff avers that at approximately 3:00 p.m., a male Caucasian officer came to his aid when he regained consciousness. [ECF Nos. 184 ¶ 22]; [*Brown Dec.* ¶¶ 44-45, ECF No. 184-8].

treatment. [ECF Nos. 122 ¶ 25, 187 ¶ 25]; [*Haslem Aff.* ¶ 12, ECF No. 122-6]; [*Pl.s' MINS Incident Report*, ECF No. 122-12 at 2].

By August 2, 2015, SBCF investigators identified three suspects in Plaintiff's assault, John Wooden, Terrill Alexander, and Devonte Byrd. [ECF Nos. 122 ¶ 27; 187 ¶ 27]; [*Haslem Aff.* ¶ 14, ECF No. 122-6]; [*Duty Warden Log*, ECF No. 122-8 at 11-13]. Supervisor Haslem wrote three memoranda to Warden Stine on August 2, 2015, describing the backgrounds of each of these inmates. [*Id.*]. They were placed in administrative confinement. [*Id.*]. On August 4, 2015, GEO Group referred its investigation to the Officer of Inspector General ("OIG), which is a state organization separate from GEO Group and has its own employees. [ECF Nos. 122 ¶¶ 28, 29; 187 ¶¶ 28, 29]; [*Hamilton Aff.* ¶ 9, ECF No. 122-1]; [*OIG Report*, Aug. 5, 2015, ECF No. 122-13 at 1]. The OIG case was assigned to Inspector Nelson Rios, who is not a GEO Group employee. [ECF Nos. 122 ¶ 29; 187 ¶ 29]; [*Hamilton Aff.* ¶ 9, ECF No. 122-1]; [*OIG Report*, ECF No. 122-13 at 1].

As shown in the OIG Report of Plaintiff's assault, Inspector Rios submitted his findings[5] to Assistant State Attorney Robert Shepherd of the Fifteenth Judicial Circuit-Belle Glade Division, who declined filing criminal charges against Plaintiff's alleged assailants. [ECF Nos. 122 ¶ 31; 187 ¶ 31]; [*Hamilton Aff.* ¶ 11, ECF No. 122-1]; [*OIG Report*, ECF No. 122-13 at 6-7]. Both the OIG and GEO Group did not deem the assault on Plaintiff as a Prison Rape Elimination Act ("PREA") related incident. [ECF Nos. 122 ¶ 32; 187 ¶ 32]; [*Hamilton Aff.* ¶ 12, ECF No. 122-1]; [*OIG Report*, ECF No. 122-13 at 8]. GEO Group was not sanctioned or fined by the contract

---

[5] Plaintiff disputes that Mr. Rios conducted a proper investigation or made "findings," and contends that whether criminal charges were warranted is not material to Defendants' entitlement to summary judgment. [ECF No. 187 ¶ 131].

monitor for the August 1, 2015 incident involving Plaintiff. [ECF Nos. 122 ¶ 40; 187 ¶ 40];

[*Hamilton Aff.* ¶ 13, ECF No. 122-1].

### IV. Disputed Facts

The following is a non-exhaustive summary of the disputed facts. The parties dispute the

number of officers present in recreation yard #2 when Plaintiff was assaulted. [ECF Nos. 122 ¶¶

16-18; 187 ¶¶ 16-18]. Defendants claim that, as evidenced by the shift roster for August 1, 2015,

there were five officers stationed in recreation yard #2 during the day shift, Officer White, Officer

Jefferson, Officer Cromer, Officer Bostic, and Officer Garcia. [ECF Nos. 122 ¶¶ 16-17]; [*Hamilton

Aff.* ¶ 8, ECF No. 122-1]; [*Haslem Aff.* ¶ 8, ECF No. 122-6]; [*Shift Roster*, Aug. 1, 2015, ECF No.

122-10]. Under GEO Group's contract with FMDS, it was required to have two permanent officers

stationed at recreation yard #2, which the roster indicates. [ECF No. 122 ¶ 18-19]; [*Hamilton Aff.*

¶ 8, ECF No. 122-1]; [*FDMS-GEO Staffing Plan*, ECF No. 122-11 at 4]. Accordingly, GEO Group

asserts that because there were five officers stationed at recreation yard #2 on August 1, 2015, they

exceeded staffing requirements for recreation yard #2 on August 1, 2015, during Plaintiff's assault.

[ECF No. 122 ¶ 18-19]; [*Haslem Aff.* ¶ 9, ECF No. 122-6]; [*Duty Warden Log*, ECF No. 122-8 at

2].

Plaintiff disputes this and claims that he only recalled seeing Officer White on the day he

was assaulted and asserts that he did not recognize the names of the other officers nor did he see

them on August 1, 2015. [ECF No. 187 ¶¶ 16-17]; [*Brown Dec.*[6] ¶¶ 33-35, ECF No. 185-8].

Plaintiff proffers that Officer White, relying on the shift roster, testified that only he and Officer

Jefferson were in recreation yard #2, which was the recreation yard for Blocks C, D, E, and G.[7]

---

[6] There is no date indicated on Plaintiff's sworn declaration. [ECF No. 185-8].

[7] This is an inaccurate assertion as to what Officer White stated. While Officer White did testify that he and Officer Jefferson were working recreation yard #2, he also stated that each unit sends one deputy to the recreation yard before

[ECF No. 187 ¶ 17], [*White Dep.* 20:2-14, ECF No. 187-4]. Plaintiff also proffers that although Defendants claim that five officers were in recreation yard #2, Defendants have failed to prove that: (a) these additional officers, other than Officer White, came to work that day; or (b) that these other officers were reassigned to the yard from their "Critical Posts." [ECF No. 187 ¶¶ 16-18].

The parties also dispute the number of inmates present on the recreation yard at the time of Plaintiff's assault. Defendants claim that, in total, there are an average of 200 to 500 inmates that will participate in recreation. [ECF Nos. 122 ¶ 15]; [*White Dep.* 19:1-23, ECF No. 122-9]. Plaintiff, claims, however, that nearly all inmates in the four dorms housing 200 inmates each were in the recreation yard on August 1, 2015. [ECF No. 187 ¶ 15]; [*Brown Dec.* ¶ 24, ECF No. 185-8]. Plaintiff avers that GEO Group has not produced an "official by dormitory count" for August 1, 2015. [ECF No. 187 ¶ 14].

The parties also dispute whether: (A) GEO Group and/or Warden Stine had a custom or policy of understaffing; (B) GEO group embraced PREA and had an atmosphere of zero-tolerance for violence against any inmates; (C) SBCF was a homophobic environment; and (D) Plaintiff's assault was thoroughly investigated. [ECF Nos. 122 ¶¶ 16-18, 27-40; 187 ¶¶ 16-18, 27-40].

Finally, the parties dispute whether Plaintiff exhausted his administrative remedies under the Prison Litigation Reform Act and whether Defendants' are barred from raising this defense since it was not raised in Defendants' motions to dismiss. [ECF Nos. 122 ¶¶ 4-49; 187 ¶¶ 41-49].

## V. Standard of Review

Under Rule 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

it opens to make sure everything is safe and secure, and that those deputies would remain in the recreation yard throughout that time. [*White Dep.* 20:20-25, 21:1-10, ECF No. 187-4].

of law." *Grayson v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id.* (quoting A*nderson*, 477 U.S. at 248). Irrelevant, unnecessary, or unsupported facts are not material and, therefore, cannot create a genuine dispute of material fact. *See Anderson*, 477 U.S. at 248.

In reviewing a motion for summary judgment, a court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Inv. Grp.*, 658 F.3d at 1307). The burden is initially on the moving party to demonstrate that a genuine dispute of material fact does not exist. *See Celotex Corp.*, 477 U.S. at 323. To do so, the movant must show the court that the nonmovant lacks the evidence necessary to support its case. *See id.* at 325.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). It is the nonmoving party's burden to come forward with "concrete evidence" on each essential element of his claim sufficient to sustain a jury verdict. *Anderson*, 477 U.S. at 256.

In meeting that burden, nonmoving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary

judgment even though they would not be admissible at trial. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex*, 477 U.S. at 324). As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

Further, "[a]n inmate's statements in a verified complaint or a sworn response to a motion for summary judgment is appropriately treated as 'testimony' when ruling on a summary judgment motion." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."). A district court also "may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). However, when reviewing the record, the trial court need not accept or give credit to conclusory allegations that are not supported by physical evidence, medical records, or corroborating witness testimony. *See Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990).

Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *Id*. at 323. That is, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## VI. Exhaustion of Administrative Remedies

As a prerequisite to filing suit under § 1983, a prisoner must exhaust his available administrative remedies at the institutional level. *See* 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). Exhaustion under the PLRA requires proper exhaustion, meaning the prisoner completes "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Defendants argue for the first time in this case in their summary judgment motion that Plaintiff has failed to properly exhaust his administrative remedies prior to filing suit. Plaintiff contends that Defendants have forfeited the defense of failure to exhaust administrative remedies by not raising it in their prior motions to dismiss. [ECF No. 184 at 26]. Plaintiff is correct. The affirmative defense of failure to exhaust administrative remedies should be raised in a Rule 12(b) motion to dismiss or treated as such when raised in a motion for summary judgment. *See Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Failure to exhaust not being expressly listed among the Rule 12(b) defenses is not an issue because federal courts have traditionally entertained unenumerated pre-answer motions. *Id.*

These unenumerated motions are subject to the rules and practices applicable to the most analogous Rule 12(b) motion. *Id.* at 1376. This inquiry is relevant because, with two exceptions involving dismissal for lack of subject-matter jurisdiction and for failure to state a claim, a party may not file a second 12(b) motion raising a defense that was available to the party but omitted from the first motion. *See* Fed. R. Civ. P. 12(g)(2).  Because a defense of "exhaustion is not adjudicated as part of the merits, it is unlike a defense under Rule 12(b)(6) for failure to state a claim, which is generally decided on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1376 n.12 (11th

11

Cir. 2008). Furthermore, this Circuit considers the administrative exhaustion requirement to be a non-jurisdictional claim-processing rule. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir. 2015); *see also Woodford*, 548 U.S. at 101 ("the PLRA exhaustion requirement is not jurisdictional"). Therefore, because the defense of failure to exhaust administrative remedies does not fall within the two exceptions[8] to Federal Rule 12(g)(2), a party raising failure to exhaust will forfeit the defense if it is not raised in the party's first 12(b) motion to dismiss. *See Brooks v. Powell*, 706 F. App'x 965, 969-70 (11th Cir. 2017).

While GEO Group, Warden Stine, and Officer White moved to dismiss Plaintiff's claims early in this case alleging that Plaintiff had failed to state a claim upon which relief may be granted, neither motion to dismiss made reference to a failure to exhaust administrative remedies. [ECF No. 58, 59]. Nor have the Defendants since alleged that the defense was unavailable to them at that time.  Because Defendants forfeited the defense of exhaustion by failing to raise it in their initial motions to dismiss, an analysis of whether Plaintiff properly exhausted all available administrative remedies prior to filing suit is moot. *See id.* at 968. Furthermore, because Defendants discussed Plaintiff's failure to exhaust administrative remedies in their Answers [ECF Nos. 33, 46, 50], the Undersigned sees no reason that the defense would not have been available when Defendants later filed their motions to dismiss [ECF No. 58, 59].

*Brooks* guides this Court in finding that, by operation of Rule 12(g)(2), Defendants' failure to raise the exhaustion defense in their first 12(b) motion forfeits the defense from being asserted

---

[8] The exceptions to Rule 12(g)(2) are provided by Rules 12(h)(2) and (3), which include dismissal for failure to join a party required by Rule 19(b), failure to state a legal defense to a claim, failure to state a claim upon which relief can be granted, or dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(2), (3). Because the first two exceptions do not apply to this question, only the latter two are discussed. *See Brooks v. Powell*, 706 F. App'x 965, 969 n.4 (11th Cir. 2017).

in any later 12(b) motion or motion for summary judgment. *See* 706 F. App'x at 969-70; *see also* Fed. R. Civ. P. 12(g)(2).

Defendants urge this Court to disregard the Eleventh Circuit's holding in *Brooks* because, the *Brooks* court "cited to *Bryant* . . . for [this] proposition which, at most, only even raises that point in *dicta*." [ECF No. 193 at 10]. Instead, Defendants cite to *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), to persuade this Court that the Eleventh Circuit treats administrative exhaustion as a mandatory pre-condition to suit with no judicial discretion to waive. *see* 159 F.3d at 1325-26; [ECF No. 123 at 15]. Defendants maintain it is "the established practice in this District of allowing Defendants to raise exhaustion of administrative remedies defenses on motion for summary judgment." [ECF No. 193 at 10-11]. These arguments lack support in contemporary caselaw, which is illustrated by Defendants' exclusive citation to cases decided over a decade ago. [*Id.*].

First, the Eleventh Circuit's discussion in *Bryant* was not *dicta* that the *Brooks* Court co-opted; rather, the discussion illustrated this legal question's development through the Eighth, Ninth, and Eleventh Circuits, as well as the Supreme Court, and its procedural argument helps explain why Defendants' reliance on *Alexander* is mistaken. *See Bryant*, 530 F.3d at 1374-75. *Alexander* answered the question of whether a court has discretion to waive the PLRA exhaustion requirement if the prison's administrative remedies are futile or inadequate. 159 F.3d at 1325. The question currently before this Court, however, is not whether a judge can exercise discretion to waive the exhaustion requirement due to futile or inadequate administrative remedies, but whether the Defendants procedurally forfeited the defense by not raising it in their first motion to dismiss.

The *Alexander* Court's analysis derived from statutory interpretation of the PLRA and congressional intent favoring a policy where all prisoner cases exhaust administrative remedies

prior to suit. *See id.* at 1325-27. When the Supreme Court analyzed the PLRA's exhaustion requirement through a procedural lens nine years later to resolve a circuit split, it held that the burden on exhaustion of administrative remedies fell to the defendant to raise and prove as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 204-05 (2007). While Congress intends for prisoners to exhaust their administrative remedies prior to suit, the defendant must still plead and prove the defense in accordance with the appropriate Federal Rules. *See id.* at 212 ("courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns"). Therefore, this Court is not improperly exercising its discretion by waiving Plaintiff's exhaustion requirement, as *Alexander* hazards against, but simply recognizing that Defendants have already forfeited the exhaustion defense by operation of the procedural bar in Rule 12(g)(2). *See Brooks*, 706 F. App'x at 970.

Second, while prior to *Brooks* there may have been an established practice to permit parties to raise exhaustion defenses in motions for summary judgment, after *Brooks* this Circuit has required the defense of exhaustion be raised in a Rule 12(b) motion and deemed it subject to the forfeiture under Rule 12(g)(2). *See, e.g., Sherman v. Quest*, No. 18-60973-CIV-ALTMAN/Reid, 2020 U.S. Dist. LEXIS 216717, at *22-23 (S.D. Fla. Nov. 18, 2020); *Berger v. Carlton*, No. 3:17-cv-1191-J-34JBT, 2020 U.S. Dist. LEXIS 117530, at *10-12 (M.D. Fla. July 6, 2020); *Davis v. Bradshaw*, No. 9:14-CV-80429, 2020 U.S. Dist. LEXIS 113645, at *9-10 (S.D. Fla. June 29, 2020); *Torres v. Posten*, No. 18-22176-CV, 2020 U.S. Dist. LEXIS 5436, at *4 (S.D. Fla. Jan. 10, 2020); *Manago v. Glass*, No. 3:16-cv-1508-J-32JBT, 2019 U.S. Dist. LEXIS 33804, at *20 n.7 (M.D. Fla. Mar. 4, 2019); *Ford v. Hayes*, No. 3:15-cv-907-J-32JRK, 2018 U.S. Dist. LEXIS 135920, at *18 n.8 (M.D. Fla. Aug. 13, 2018); *Groover v. United States Corr.*, No. 15-cv-61902-BLOOM/Valle, 2018 U.S. Dist. LEXIS 243912, at *23-26 (S.D. Fla. July 16, 2018); *Oliver v.*

14

*Whitehead*, No. 3:14-cv-1506-J-39JRK, 2017 U.S. Dist. LEXIS 185632, at *4-6 (M.D. Fla. Nov. 7, 2017) (list of recent cases in this Circuit where exhaustion defense was treated as 12(b) motion and subject to forfeiture per Rule 12(g)(2) when not raised in first motion to dismiss).

Notably, Defendants failed in their Motion [ECF No. 123] and Reply [ECF No. 193] to identify any cases decided in this Circuit since *Brooks* that did not treat the exhaustion defense as forfeited when raised in a subsequent motion to dismiss or motion for summary judgment. They do not give this Court a compelling reason to depart from the recent, yet well-established, judicial precedent affirming the Eleventh Circuit's rule on exhaustion defense forfeiture. "The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Brooks*, 706 F. App'x at 969 (quoting *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)). Defendants engaged in piecemeal litigation by failing to raise the defense previously, thus the defense is forfeited. *See Brooks*, 706 F. App'x at 969-70.

## VII. Discussion (Constitutional Claims)

### A. (Count II) Deliberate Indifference to Plaintiff's Safety & Protection

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Estate of Owens v. GEO Group, Inc.,* 660 F. App'x. 763, 766 (11th Cir. 2016) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations omitted)). "Thus, it has long been recognized that 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" *Id.* at 767 (citations omitted).

To establish that GEO Group, Officer White, and Warden Stine are liable under the Eighth Amendment for his injuries, Brown must prove that they acted with "deliberate indifference" to his health or safety. *See Caldwell*, 748 F.3d at 1099. A prison official acts with deliberate

indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

A known danger may arise either because there is a risk posed by one specific inmate against another, because there is a some other more general pervasive risk of harm, or because violence at the institution occurs with sufficient frequency that prisoners are put in reasonable fear for their safety and the need for protective measures has been made known to prison officials. *Miles v. Jones*, No. 08-20612-CIV, 2010 WL 5574324, at *5–6 (S.D. Fla. Nov. 22, 2010); *see also Abrams v. Hunter,* 910 F. Supp. 620, 624–25 (S.D. Fla. 1995). "However, not 'every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety.'" *Estate of Owens,* 660 F. App'x. at 766 (quoting *Farmer*, 511 U.S. at 834).

Therefore, "[t]o survive summary judgment on a deliberate indifference failure-to-protect claim, 'a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Caldwell*, 748 F.3d at 1099 (quoting *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013)).

"When examining the first element--a substantial risk of serious harm--the court uses an objective standard." *Id.* (citation omitted). Brown must show that he is incarcerated under conditions that pose a substantial risk of serious harm. *Farmer,* 511 U.S. at 834.

The second element has *both* an objective and subjective component. *Caldwell*, 748 F.3d at 1099. To satisfy the objective component, Brown must produce evidence that GEO Group, Officer White, and Warden Stine disregarded a known risk by failing to respond to it in an objectively reasonable manner. *See id.*

To satisfy the subjective component, Brown must produce evidence that GEO Group, Officer White, and Warden Stine "actually subjectively knew that [he] faced a substantial risk of serious harm." *See id.* The prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834. A culpable state of mind is one of "deliberate indifference" to the inmate's health or safety. *Wilson,* 501 U.S. at 297; *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference "describes a state of mind more blameworthy than negligence . . .." *Owens v. Sec'y of Fla. Dep't of Corr.,* 812 F. App'x 861, 867 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 835, 837).

Finally, there must also be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *LaMarca v. Turner,* 995 F.2d 1526, 1536 (11th Cir. 1993). The prison official must ignore a substantial risk of serious harm to the inmate which results in the harm at issue in the case. *Wilson,* 501 U.S. at 298; *Estelle,* 429 U.S. at 106.

1) Legal Analysis

a. *Warden Stine (Official Capacity) & GEO Group*

Plaintiff brings an Eighth Amendment deliberate indifference claim against Warden Stine, in his official capacity, and GEO Group. *See* [*Third Amend. Compl.,* ECF No. 57]. Generally, Plaintiff argues that the understaffing of the recreation yard, its history of violence, non-working cameras, and the homophobic atmosphere tolerated at SBCF created an unreasonable risk of harm to inmate safety and provided fair notice of the need for protective measures. [ECF No. 184 at 11]. Defendants argue, however, that there is no evidence here of any specific facts by which Defendants could have been aware of or inferred the potential for an attack on Plaintiff. [ECF No. 193 at 6].

17

Plaintiff's official capacity claim against Warden Stine is the same as a claim against GEO Group. *See Grawbadger v. Emanoilidis*, No. 2:10-CV-528-FTM-SPC, 2012 WL 3838933, at *8 (M.D. Fla. Sept. 4, 2012) (noting plaintiff's claim against defendants in their official capacities is a claim against the entity defendants represent, GEO Group). Although GEO Group is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). To impose liability on GEO Group, a private corporation performing state functions, Plaintiff must establish the same elements as those applied to determine municipal or local government liability. *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997).

With respect to his claim regarding GEO Group policies, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that [GEO Group] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A policy is a decision that is officially adopted by the [entity], or created by an official of such rank that the official could be said to be acting on behalf of the [entity]. A custom is practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1331–32 (11th Cir. 2007). Finally, Plaintiff can only prove causation by showing that GEO Group's "deliberate conduct … was the moving force behind [his] injury." *Fields v. Corizon Health, Inc.,* 490 F. App'x 174, 185 (11th Cir. 2012) (quoting *McDowell,* 392 F.3d at 1292) (alteration in original).

*Purported Custom or Policy of Understaffing & Recreational*
*Yard's Purported History of Violence*

Plaintiff appears to proffer the following evidence to demonstrate that GEO Group had a policy or custom that led to his assault. The evidence, however, fails to even demonstrate that GEO Group had a policy of understaffing, and fails to demonstrate the first element of a deliberate indifference claim, that Plaintiff was exposed to an objective substantial risk of serious harm.

First, Plaintiff references Officer White's deposition, where he testified that there were three or four inmate-on-inmate assaults each month. [ECF No. 187 ¶ 8]; [*White Dep.* 24:8-16, Aug. 6, 2020, ECF No. 185-4]. Plaintiff mischaracterizes Officer White's statements. Officer White specifically testified that these would be "[b]asic things for a fight." [*White Dep.* 24:17-21, ECF No.185-4]. In fact, Officer White explained that he was not sure how frequent assaults occurred where an inmate was taken to the hospital or a weapon was used. [*Id.* 25:2-9]. Officer White's statement does not address serious assaults nor is there a discussion of the circumstances surrounding these "[b]asic things for a fight." Further, Plaintiff does not explain how any of these incidents were linked to understaffing.

Plaintiff also refers to the Serious Incident Reports ("SIR Reports") requested from Defendants during discovery, that show incidents of inmate-on-inmate assaults at SBCF which resulted in hospitalization, from August 1, 2011 to August 1, 2015. [*Order on Mot. to Compel* [ECF No. 94], Nov. 12, 2020, ECF No. 106]. Plaintiff created a chart summarizing the twenty-four SIR Reports Defendants produced during discovery. [ECF No. 187 ¶ 8]; [*SIR Reports*, January 4, 2021, ECF No. 108-1]. Specifically, the chart reflects that, in 2012, there were four assaults in the recreation yard that required hospitalization of the victim, and in 2013, there were four more, with the last occurring on August 26, 2013. [*Id.*]. Plaintiff does not explain how these incidents were correlated with understaffing.

19

Additionally, Plaintiff references two draft Investigative Reports contained in a December 13, 2013 email from Warden Stine, describing an inmate-on-inmate assault; however, neither of these assaults occurred in the recreation yard. [ECF No. 187 ¶ 8]; [*Stine Email*, Dec. 13, 2013, ECF No. 185-5 at 4-7]. Plaintiff also references emails from Warden Stine and points to two other incidents, occurring on October 12, 2013, and January 31, 2014,[9] that were not included in the twenty-four SIR Reports produced, where an inmate was assaulted and injured seriously enough in the recreation yard to be taken to the infirmary. [187 ¶ 8]; [*Email of Incident*, Oct. 15, 2013, ECF No. 185-6]; [*Mem. of Incident*, Feb. 6, 2014, ECF No. 185-7]. The emails do not contain any reference to understaffing.

To further support his claim of understaffing, Plaintiff proffers evidence that GEO Group was cited by the FDOC for a contract violation regarding documentation of staffing in May 2014. [ECF No. 187 ¶ 4]. Specifically, the FDOC sent GEO Group a May 29, 2014 "Notice of Non-Compliance" noting that "[a] review of the April position control log reflect[ed] omissions from the March log[,]" and the Notice indicated that "the Contract requires the Facility to provide on a monthly basis accurate and timely position control logs." [ECF No. 187 ¶ 4]; [*Not. of Non-Compliance*, May 29, 2014, ECF No. 185-1]. The FDOC required a "plan of action . . . to correct this violation . . . within twenty days. [*Id.*]. Warden Stine complied with the request. [*Stine Response*, June 12, 2014, ECF No. 185-2]. This evidence does not support a claim of a pattern or practice of understaffing; it establishes only that GEO Group did not keep adequate position control logs for a period of one month, almost fifteen months prior to Plaintiff's assault.

---

[9] Plaintiff asserts that there was a January 2, 2014 incident; however, the Report indicates that the incident occurred on January 31, 2014. [*Mem. of Incident*, Feb. 6, 2014, ECF No. 185-7].

Here, Plaintiff does not link any of the evidence to a policy or custom of understaffing. Moreover, the evidence shows that serious assaults were relatively infrequent in light of Plaintiff's claim that 800 inmates regularly used the recreation yard. The evidence simply does not demonstrate that Plaintiff was exposed to an objective substantial risk of serious harm. *See Torres-Bonilla v. City of Sweetwater,* 805 F. App'x 839, 841 (11th Cir. 2020) (finding no reasonable jury could find that there was a "widespread" unofficial practice "so permanent and well settled as to constitute a custom or usage with the force of law," where at most plaintiff only demonstrated that some violation occurred against him and only offered conclusory claims that there was an unwritten custom of accepting illegal seizures more broadly, but did not back them up with any evidence).

"[W]ithout showing a regular or constant threat of violence, procedures used by a prison—even if deficient—do not amount to deliberate indifference or violate the Eighth Amendment's cruel and unusual punishment clause." *Est. of Owens v. GEO Grp., Inc.,* 660 F. App'x 763, 771 (11th Cir. 2016). For example, in *Harrison v. Culliver,* 746 F.3d 1288 (11th Cir. 2014), the court granted summary judgment for the defendant when the plaintiff presented evidence of 33 incidents of inmate-on-inmate violence over the span of three and a half years, four of which occurred in the same hallway where the assault of the plaintiff occurred, in a prison which housed 800-900 inmates. The Court concluded that the evidence presented did not "indicate that inmates were exposed to something even approaching the constant threat of violence." *Id.* at 1300 (citations and quotations omitted). In *Lorenzo v. Williams,* summary judgment was granted when the plaintiff alleged an average of 6 inmate-on-inmate assaults per month occurred in the year he was attacked in a prison population of 1500-1600. CV 616-011, 2018 WL 3863529, *7 (S.D. Ga. July 30, 2018).

The district court "conclude[d] that these superficial statistics [were] insufficient to demonstrate a substantial risk of serious harm to inmates." *Id*.

Finally, in *Marbury v. Warden*, 936 F.3d 1227, 1231 (11th Cir. 2019), the plaintiff affirmed he personally witnessed 15 inmate stabbings prior to the incident in which he was stabbed, he wrote letters to the warden asking to be moved to another dorm (he described his dorm as an "overrated gang affiliated block"). The Court found the evidence insufficient to sustain an Eighth Amendment claim, expounding that where the court has found deliberate indifference to a substantial risk of serious harm, the plaintiff has "pointed to specific features of a facility or its population rendering it particularly violent" and Marbury failed to show a generalized risk of violence or allege "specific features of the prison that would make it particularly violent." *Id.* at 1235.

It can hardly be disputed that a jail can always be made safer by increasing staff and providing more modern facilities. *Presley v. Smith*, No. CIV.A.07-0580-KD-M, 2008 WL 3911251, at *7 (S.D. Ala. Aug. 21, 2008). However, it is not a constitutional violation for the responsible parties to fail to provide premium facilities and staffing. *Id*. The fact remains that the number of assaults in the recreation yard here is far less than what this Circuit has held to be sufficient to demonstrate an objectively substantial risk of serious harm to inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Next, on this record, Plaintiff has not demonstrated that Defendants were subjectively aware of a serious risk of harm. "It is not enough that a plaintiff proves that the defendants should have known of the risk; conscious awareness is the key." *Harrison v. Culliver*, No. CIV.A. 09-0283-KD-C, 2011 WL 4402137, at *5 (S.D. Ala. Aug. 26, 2011), *report and recommendation*

*adopted,* No. CIV.A. 09-00283-KD-C, 2011 WL 4402107 (S.D. Ala. Sept. 22, 2011), *aff'd,* 746 F.3d 1288 (11th Cir. 2014).

Based on Plaintiff's evidence of past serious incidents on the recreation yard, there were a total of twenty-eight serious assaults in the entire prison occurring from August 1, 2011, to August 1, 2015, with only three assaults occurring in 2015 throughout all of the prison. With respect to assaults in the recreation yard, there were ten assaults which occurred within this time period. The most recent occurred on January 31, 2014, almost eighteen months prior to Plaintiff's assault. Plaintiff's evidence does not establish that the recreational yard at SBCF is a particularly violent area of the prison which would put GEO Group on notice that he would be assaulted there. Accordingly, this evidence fails to demonstrate that GEO Group was subjectively aware of a substantial risk of serious harm to Plaintiff. *See Caldwell*, 748 F.3d at 1099.

*Video of Incident*

Plaintiff has submitted a one-minute video of the incident which includes a view of the basketball court and the bleachers where the incident occurred. [*Incident Video*, Aug. 1, 2015, ECF No 185-13]. The video appears to contradict Plaintiff's claim of understaffing.

The video shows a correctional officer at 15:02:17 at the far end of the basketball court diagonally across from the bleachers. [ECF No. 185-13]. The correctional officer walks in view of the video camera for a few seconds and then walks out of view. At 15:02:30 a scuffle appears to ensue among a group of inmates moving rapidly and then an inmate or inmates on the ground. [*Id.*]. At 15:02:40 the same correctional officer enters the frame directly across from the bleachers and walks toward the bleachers and the scuffle, which appears to have dissipated. [*Id.*]. At 15:02:56 the officer reaches the bleachers and the area where the scuffle occurred. [*Id.*].

Based on this video, it appears that a correctional officer was in the vicinity and responded within one minute of the incident. As the Eleventh Circuit has stated, "the Eighth Amendment does not require the uninterrupted personal supervision of all inmates." *Est. of Owens v. GEO Grp., Inc.,* 660 F. App'x 763, 773 (11th Cir. 2016); *see also Purcell v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1323 n.23 (11th Cir. 2005) ("The Constitution does not require that every inmate in a jail be observed by a guard every twenty minutes."); *Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir. 1995) (evidence that jailer failed to check on group cell during hour between last check and beating was not sufficient to show deliberate indifference). Here, the officer's quick response belies Brown's claim that deliberate indifference in the form of understaffing led to his assault.

*Cameras in Recreational Yard*

Plaintiff also proffers that inadequate security cameras in the recreational yard caused his assault. [ECF No. 184 at 11]. Plaintiff references an October 24, 2014 email exchange between Warden Stine and Ernie Dixon, where Warden Stine complained about the denial of a previously approved camera upgrade for SBCF. [ECF No. 187 ¶ 24]; [*Video Camera Emails,* Oct. 24, 2014, ECF No. 185-20]. Most importantly, this email exchange describes the purchase of cameras for specific listed areas, but there is no mention of the "recreation yard" as an area in need of cameras for purchase. [*Id.*].

Plaintiff also points to SBCF's March 2015 annual review and notes that in the area to indicate whether SBCF was compliant or non-compliant with video tape policy, the area was left blank. [ECF No. 184 ¶ 24]; [*SBCF Annual Review*, Mar. 23, 2015, ECF No. 185-21 at 22]. Plaintiff asserts that by June 25, 2015, SBCF had received new cameras, but by July 27, 2015, the cameras had yet to be installed. [ECF Nos. 184 ¶ 24]; [*Weekly Operations Report*, June 29, 2015, ECF No. 185-23 at 21]; [*Weekly Operations Report*, July 20, 2015, ECF No. 185-24 at 23, 56].

Here, the failure to install new cameras by the date of Plaintiff's assault would have no bearing on Plaintiff's deliberate indifference claim because, as shown in the evidence provided by Plaintiff, cameras were not requested for the recreation yard. *See Watkins v. Pinnock,* No. 16-63017-CIV-WPD, 2017 WL 10398205, at *3 (S.D. Fla. Nov. 20, 2017), *aff'd,* 802 F. App'x 450 (11th Cir. 2020) (finding that "[t]he absence of video cameras does not constitute a custom or policy amounting to deliberate indifference."). Further, Plaintiff has not proffered that other inmates were even aware of a lack of video cameras which would contribute to their inclination to commit assaults.

### *Purported Homophobic Atmosphere at SBCF*

Finally, Plaintiff argues that the homophobic atmosphere tolerated at SBCF caused his assault and that Defendants should have been aware or were aware of these concerns. [ECF No. 184 at 11]. Plaintiff provides only his declaration in support of this contention. While "[a]n inmate's statements in a verified complaint or a sworn response to a motion for summary judgment is appropriately treated as 'testimony' when ruling on a summary judgment motion," *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019), "[t]he general rule is that inadmissible hearsay cannot be considered." *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir. 1999). The only exception to this general rule is when "the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Coffman v. Battle*, 786 F. App'x 926, 934 (11th Cir. 2019) (citation omitted).

Plaintiff claims his assault occurred because he is gay. [*Brown Dec.* ¶ 10, ECF No. 185-8 ¶¶ 28-31, 38]. Specifically, Brown asserts that "[t]he atmosphere at [SBCF] was very hostile toward homosexual inmates[,] that it seemed that everyone from Warden Stine on down knew about the problem[,] [and that this was] "triggered in part by homophobic gangs and the guards

25

who tolerated their behavior and seemed to rely on it to substitute for their own supervisions." [*Id.* ¶ 10]. These specific allegations are wholly conclusory. Further, Plaintiff's reference to having "heard from other inmates that other homosexual inmates had been assaulted for being gay, but no hate crime charges were ever brought" are hearsay statements, for which the Court cannot seem to carve out an exception. [*Id.* ¶ 12].

As argued by Defendants, Plaintiff does not include affidavits from these inmates, the names of these inmates, affidavits from the inmates who witnessed his assault, or any facts concerning the purported circumstances that led to reports to Plaintiff of violence against homosexuals. [ECF No. 193 at 5]. A genuine dispute cannot be created "by simply relying on legal conclusions or evidence which would be inadmissible at trial. The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citation omitted).

When considering all of Plaintiff's claims and viewing all the facts in the light most favorable to Plaintiff, there is insufficient evidence in the record to show that GEO Group had a custom or policy of understaffing. Even so, had Plaintiff established a custom or policy by GEO Group of understaffing, Plaintiff has failed to show that there is any genuine dispute as to whether GEO Group was subjectively aware, or present objective evidence from which an inference could be drawn of a substantial risk of harm to Plaintiff.

Further, there is no indication that GEO Group was aware that the specific inmates who assaulted Plaintiff would do so, that Plaintiff was prone to an attack, or that an assault against Plaintiff would occur on the recreation yard. To establish a constitutional violation, there must a be a strong likelihood of injury for a defendant to have knowledge of a risk of harm, rather than a mere possibility. *See Brown*, 984 F.2d at 1527. There was no strong likelihood of injury here.

In addition, Brown has not provided evidence that there were insufficient video cameras on the recreation yard, or that the attack was the result of insufficient video cameras. Finally, the only evidence proffered by Plaintiff of the prison's anti-homosexual atmosphere and whether it caused the attack is Brown's conclusory, hearsay statements. Therefore, there is no genuine dispute of material fact as to whether GEO Group was deliberately indifferent to Plaintiff's safety and protection under the Eighth Amendment.

### b. *Officer White (Individual Capacity)*

Brown asserts that while one of the inmates was taunting him with homophobic slurs, he "started to look around for a correctional officer because the situation was escalating, and [he] felt threatened." [*Brown Dec.* ¶ 32, ECF No. 185-8]. He saw only one officer, who he "later learned was Officer White[,] . . . on the recreation yard track about 50 yards away on the other side of the yard," and that "Officer White was very involved with talking to a group of inmates." [*Id*. ¶¶ 32-33]. Plaintiff asserts that Officer White was "hanging out with the inmates, acting as if he was their friend, not a correctional officer . . . and was not performing his duties." [*Id*. ¶ 33]. He alleges that Officer White's lack of attention to his duties created a substantial risk of harm and caused his injury. [ECF No. 184 at 11].

Officer White testified at deposition that he had no recollection of Plaintiff nor the incident.[10] [ECF Nos. 122 ¶ 21; 187 ¶ 21]; [*White* Dep. 15:16-16:1, ECF No. 122-9]. He argues that no substantial risk of harm existed of which he was either subjectively and objectively aware and that he acted in a reasonable manner, and therefore, Plaintiff's Eighth Amendment claim

---

[10] Plaintiff begins his opposition to Defendants' Motion by reciting a quote from a book discussing operating private prisons for profit. [ECF No. 184 at 4]. Plaintiff then proceeds to discuss that PACER reveals a number of lawsuits outside of the Eleventh Circuit against GEO Group, involving deliberate indifference to inmate health and safety. These propositions bear no relevance to this case. Accordingly, these propositions will not be considered by the Undersigned.

cannot survive as a matter of law. [ECF No. 123 at 10-11]. Specifically, Defendants deny that Officer White alone patrolled recreation yard #2 that day. [*Id*. at 7-8]. They maintain the recreation yard was adequately staffed. [ECF No. 123 at 7-9, 10-11]. Moreover, Defendants claim that because Officer White was walking the recreation yard and conducting a security check, he was able to find Plaintiff injured on the ground. [*Id*.]. Plaintiff's incident report corroborates this assertion and indicates that Officer White found Plaintiff on the ground injured after the assault. [ECF Nos. 122 ¶ 22, 187 ¶ 22]; [*Haslem Aff.* ¶ 10, ECF No. 122-6]; [*Pl.'s Incident Report*, Aug. 12, 2015, ECF No. 122-12 at 2]. Plaintiff claims, however, that it was a male Caucasian officer that came to his aid when he regained consciousness. [ECF Nos. 184 ¶ 22]; [*Brown Dec.* ¶¶ 44-45, ECF No. 184-8].

In any event, construing the facts in the light most favorable to Plaintiff, even if Officer White was the only correctional officer on duty in recreation yard #2 at the time of Plaintiff's assault and was distracted by other inmates, those facts alone do not support a claim of deliberate indifference. Plaintiff has not pleaded any facts nor provided any evidence to show that Officer White had a culpable state of mind or was subjectively aware that he faced a risk of serious harm. *See Farmer,* 511 U.S. at 834. There has been no evidence presented that Plaintiff made Officer White aware that he would be assaulted generally, or that he faced a particularized risk from a specific inmate.

Brown's attack has some important similarities to the inmate-on-inmate attack in *Estate of Owens v. GEO Group, Inc*., 660 F. App'x 763 (11th Cir. 2016). There, an inmate lethally attacked another inmate in a prison classroom sixty-five seconds after the instructor briefly left the classroom. *Id*. at 768-69. A security officer was stationed "some 25 feet from the classroom door" and another "was posted at another gate farther down the walkway." *Id.* The attacking inmate

28

closed the classroom door and without warning or provocation struck the victim who would later die from his injuries. *Id*. There was no evidence that the instructor had any subjective knowledge of the attack or that the attacking inmate had a history of violence or was a rival, nor had the victim complained of feeling unsafe or threatened. *Id*.

There must be a "'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)). Without some evidence that Officer White was on notice of any likelihood that Plaintiff would be assaulted, Officer White cannot be held liable for a constitutional claim. Accordingly, there is no genuine dispute as to Officer White's liability on the deliberate indifference claim.

### c.   Warden Stine (Individual Liability)

Plaintiff appears to bring his individual capacity claim against Warden Stine under a theory of supervisory liability. *See* [ECF No. 184 at 11]. Supervisory liability occurs either when (1) the supervisory official personally participates in the alleged unconstitutional conduct; or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). As set forth above, "[t]his is is essentially the same showing that a plaintiff must make to hold an entity like GEO Group liable under § 1983." *Fuentes v. Heller*, No. 16-CIV-81047, 2017 WL 11467823, at *10 (S.D. Fla. Dec. 7, 2017), *report and recommendation adopted,* No. 9:16-CV-81047, 2018 WL 10072939 (S.D. Fla. Jan. 10, 2018).

Defendants assert that Warden Stine was not on duty when Plaintiff was attacked, and even under a theory of supervisory liability, there is no causal connection between the warden's supervisory decisions and Brown's injury.  [ECF No. 123 at 8-9].

Regarding Plaintiff's supervisory liability claim, Plaintiff "may advance an Eighth Amendment claim for failure to protect an inmate under two different theories." *Est. of Owens v. GEO Grp., Inc.,* 660 F. App'x 763, 769 (11th Cir. 2016). Under the first theory—the particularized risk claim—Plaintiff may show that he was the target of a specific threat or danger, "and that the employees subjectively were aware of the individualized danger, yet they failed to act to alleviate that risk." *Id*. Brown has not pled a particularized risk claim. Alternatively, on the second theory— the dangerous conditions claim—Plaintiff may demonstrate that the prison conditions he was subjected to were so dangerous that they resulted in cruel and unusual punishment. *See id*. On this record, Plaintiff has satisfied neither.

The Undersigned has already observed that there was no Eighth Amendment constitutional violation on the part of Warden Stine's subordinate, Officer White. *See Johnson v. Hutton,* No. 717CV00274AKKJHE, 2019 WL 960193, at *10 (N.D. Ala. Jan. 10, 2019), *report and recommendation adopted,* No. 717CV00274AKKJHE, 2019 WL 952550 (N.D. Ala. Feb. 27, 2019) (finding that because subordinates were not subjectively aware that a particular inmate posed a safety risk to the plaintiff prior to plaintiff's assault, or that subordinates were deliberately indifferent to the plaintiff's safety immediately after the assault, any claim against the defendants for supervisory liability based on the actions of their subordinates necessarily fails.)

Second, Plaintiff has offered no record evidence that Warden Stine personally participated in any way in the events surrounding Plaintiff's attack or had any knowledge of the particularized

events surrounding Plaintiff's attack prior to its occurrence. Plaintiff has not pleaded that Warden Stine was aware that certain inmates would assault him.

Further, for the same reasons that Plaintiff has failed to demonstrate that GEO Group had a policy or custom of failing to understaff that led to his assault, he has failed to demonstrate that Warden Stine had a custom or policy of failing to understaff that led to Plaintiff's assault. Plaintiff's arguments with respect to a custom or policy by GEO Group are the same for Warden Stine, in his individual capacity.

Next, to the extent Plaintiff is proceeding under the legal theory that Warden Stine was on notice of a widespread abuse at SBCF, this claim also fails. The Eleventh Circuit has articulated that a "violence-is-the-norm standard applies where a plaintiff alleges only a generalized risk and points to no 'specific features of a facility of its population rendering it particularly violent.'" *Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020) (quoting *Marbury*, 936 F.3d at 1235).

Accordingly, "if the only evidence of deliberate indifference to inmate-on-inmate abuse is that jail officials knew about a generalized risk of violence, without more, the evidence must show that the risk was so great it was something close to normalized violence or a reign of terror." *Id*. To the extent that Plaintiff is alleging that Warden Stine was on notice of a generalized risk of violence on the recreation yard, Plaintiff would have to show that the recreation yard was a place where violence and terror reigned. There is no evidence of that here.

Alternatively, if a plaintiff alleges that there are "specific features of a [prison] that render it particularly violent," as opposed to claiming a general risk, the Eleventh Circuit has held that this may constitute "fair warning" to defendants "that their alleged failure to correct the known inmate-on-inmate abuse at a jail violated a clearly established constitutional right." *Dickinson*, 833

F. App'x at 275. To the extent Plaintiff is proceeding under this theory by claiming that there are specific conditions at SBCF that make it particularly violent, which would provide "fair warning" to Warden Stine, this claim is also without merit. *See id.*

Instances where the Eleventh Circuit has affirmed the denial of summary judgment and found that a prison was particularly violent are distinguishable from the facts here. For example, in *Hale v. Tallapoosa County*, the Eleventh Circuit determined that a prisoner's claim survived summary judgment because there was evidence that prisoners were not segregated based on their proclivity for violence, there was only one jailer on duty, the jailer's quarters were out of earshot and eyesight of the prisoners' cell, and fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization. 50 F.3d 1579, 1581-84 (11th Cir. 1995).

Moreover, in *Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir. 2001) (en banc), the Eleventh Circuit held that the former inmates alleged sufficient facts to survive summary judgment when they claimed:

> 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 2) at times the Jail housed more prisoners than the cells could accommodate, 3) the Jail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the Jail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed, 10) the Jail was not operated in accordance with written policies, 11) inmates were not screened for mental health, medical conditions or conflicts with other prisoners before entering the Jail, and 12) prisoners were not disciplined or segregated when they attempted to escape, threatened jailers, destroyed property or assaulted other inmates.

The Court reasoned that, "[t]aken as a whole, these alleged conditions, if true, present an objectively substantial risk of serious harm—including the risk of inmate-on-inmate attacks—to inmates. *Id*. at 1029. Plaintiff has not alleged facts even comparable to those in *Marsh* and *Hale*.

Here, Plaintiff has not provided sufficient evidence to create a genuine dispute as to whether the recreation yard at SBCF constituted an objective substantial risk of harm to him. *See Caldwell*, 748 F.3d at 1099. Plaintiff has also failed to offer sufficient evidence that Warden Stine was aware or should have been aware of a strong likelihood that he would be assaulted. *See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990); *see also Copeland v. Burkhalter,* No. 4:06-CV-0221-HLM, 2007 WL 9702935, at *18 (N.D. Ga. Oct. 31, 2007) (finding the record did not support plaintiff's contention that defendant officers knew that the Jail was significantly understaffed so as to pose a serious risk of danger to inmates from sexual assaults or other inmate on inmate attacks, even though defendants requested additional officers for the Jail, and that the record did not support plaintiff's contention that defendant had actual subjective knowledge that the understaffing at the Jail posed a substantial risk of serious harm from inmate-on-inmate violence at the Jail, or that the risk was so obvious as to amount to subjective knowledge of the risk).

Consequently, no genuine dispute remains with respect to Plaintiff's claim that Warden Stine was deliberately indifferent to Plaintiff's safety and protection under the Eighth Amendment. As such, the Court recommends that summary judgment be granted for Defendants on Plaintiff's Constitutional deliberate indifference claim under the Eighth Amendment (Count II).

### B.  (Count III) Equal Protection

Plaintiff claims that GEO Group violated his rights under the Equal Protection Clause of the Fourteenth Amendment because it failed to seriously investigate his assault. *See* [*Third Amend. Compl*, ECF No. 57]; [ECF No. 184 at 15]. He claims that had he been a heterosexual inmate,

GEO Group would have taken his assault more seriously. *See* [*id.*]. GEO Group asserts that Plaintiff's assault was investigated just like any other inmate incident. [ECF No. 193 at 7-8].

1) Applicable Law (Equal Protection)

Under the Fourteenth Amendment's Equal Protection clause, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "To establish an equal protection claim, a prisoner must establish that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–947 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)).

Plaintiff must also prove that GEO Group acted with a "discriminatory purpose" or "discriminatory intent." *Wilkinson v. GEO Grp., Inc.,* 617 F. App'x 915, 919 (11th Cir. 2015) (citation omitted); *McClesky v. Kemp,* 481 U.S. 279, 292 (1987). "Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient." *Graham v. Neel,* No. 5:10CV27 RS EMT, 2010 WL 4604608, at *5 (N.D. Fla. Oct. 5, 2010), *report and recommendation adopted,* No. 5:10CV27 RS EMT, 2010 WL 4607020 (N.D. Fla. Nov. 5, 2010) (finding plaintiff did not plead equal protection claim based on defendant's failure to grant plaintiff's request to be placed in protective custody because plaintiff only alleged that other inmates were in confinement under protective custody without showing that these other inmates were placed there under circumstances similar to plaintiff).

2) <u>Legal Analysis</u>

*Failure to Show Differential Treatment*

Plaintiff has failed to plead any facts to establish that heterosexual prisoners received more complete or more favorable investigations. This case is comparable to *Doe v. Univ. of Alabama in Huntsville*, 177 F. Supp. 3d 1380, 1397 (N.D. Ala. 2016), where a plaintiff alleged that a university discriminated against her based on her sex by failing to adequately investigate an assault against her which she reported to the university. The court found that Plaintiff failed to plead any facts which established a constitutional violation of her right to equal protection because plaintiff did not "provide any information regarding anyone else, not in her protected class, who received more favorable treatment." *Doe*, 177 F. Supp. 3d. at 1397. There, sanctions were imposed against plaintiff's attackers after an investigation and the court found that plaintiff's discontent with the outcome of the investigation did not constitute a violation of her right to equal protection. *Id.*

Similarly, Plaintiff does not describe any investigations of assaults on heterosexual prisoners to show that he was treated differently based on his sexual orientation. *Clark v. Owens,* No. CV614-122, 2015 WL 1959184, at *8 (S.D. Ga. Apr. 30, 2015), *report and recommendation adopted,* No. CV614-12, 2015 WL 3550066 (S.D. Ga. May 29, 2015) (finding plaintiff set forth no facts indicating that prison officials treated him differently than similarly situated prisoners based on a discriminatory intent where plaintiff simply alleged that that officials' failure to provide him a disciplinary hearing deprived him equal protection of the law).

In any event, there is no dispute that GEO Group investigated Plaintiff's assault, assisted him in identifying the perpetrators, and sent the matter to the OIG for further investigation. [ECF No. 122 ¶¶ 27-29, 187 ¶¶ 27-29]; [*OIG Report*, ECF No. 122-13]. Specifically, by August 2, 2015, SBCF investigators identified three suspects, and Supervisor Haslem wrote three memoranda to

Warden Stine, describing the background of these inmates. [ECF No. 122 ¶ 27]; [*Haslem Aff.* ¶ 14, ECF No. 122-6], [*Duty Warden Log*, ECF No. 122-8 at 11-13]. These inmates were placed in administrative confinement pending investigation surrounding Plaintiff's assault. [ECF No. 122 ¶ 27]; [*Haslem Aff.* ¶ 14, ECF No. 122-6], [*Duty Warden Log*, ECF No. 122-8 at 3]. It was further recommended that Plaintiff be special reviewed against these inmates, meaning that were not to be placed in the same prison as Plaintiff. [*Duty Warden Log,* ECF No. 122-8 at 14, 15]; [*Stine Dep.* 85:21-2, 86:1-17]. This evidence does not show any indication of discrimination or a failure to investigate by GEO Group.

Because there is no triable issue for a jury as to whether GEO Group violated Plaintiff's Equal Protection rights under the Fourteenth Amendment, summary judgment should be granted for GEO Group on Count III of Plaintiff's constitutional claims.

## VIII. State Law Counts

Accordingly, the only remaining claims are Plaintiff's state law claims for Negligence (Count I) and Intentional Infliction of Emotional Distress (Count II), brought pursuant to the doctrine of pendent or supplemental jurisdiction. [ECF No. 57 at 1]. Under 28 U.S.C. § 1367(c), a court "may decline to exercise its supplemental jurisdiction when all claims over which the [] court had original jurisdiction have been dismissed." When deciding whether to continue to exercise its supplemental jurisdiction, the court should consider the factors of "judicial economy, convenience, fairness, and comity." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Plaintiff's state law claims should be dismissed without prejudice to permit him to pursue his state law claims in a more appropriate forum. Resolution of Plaintiff's state law claims depends upon determinations of state law. *See Baggett*, 117 F.3d at 1353. Specifically, with regard to

Plaintiff's negligence claim, there appears to be a split of authority among Florida appellate courts regarding the question of foreseeability. *See Butzer v. CoreCivic, Inc,* No. 5:17-CV-360-OC-30PRL, 2018 WL 7144481, at *4 (M.D. Fla. Dec. 5, 2018). The First District Court of Appeal and the Fourth District Court of Appeal differ as to the defining law, and "[n]either the Florida Supreme Court, nor the Eleventh Circuit Court of Appeals has ruled which standard applies." *Id.* "[T]he state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so." *Lee v. Blackmon,* No. 3:15CV129/MCR/EMT, 2016 WL 749173, at *7 (N.D. Fla. Jan. 22, 2016), *report and recommendation adopted,* No. 3:15CV129/MCR/EMT, 2016 WL 740469 (N.D. Fla. Feb. 24, 2016).

 "[W]hen all . . . federal claims have been dismissed pretrial, Supreme Court case law 'strongly encourages or even requires dismissal of the state claims." *Est. of Owens v. GEO Grp., Inc.,* 660 F. App'x 763, 775 (11th Cir. 2016) (quoting *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir. 1984)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Finally, Plaintiff's state law claims would still be timely. "[U]nder § 1367, the statute of limitations of the remaining pendent claims 'shall be tolled while the claim[s are] pending and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period.'" *Dukes v. State of Georgia,* 212 F. App'x 916, 917–18 (11th Cir. 2006) (quoting 28 U.S.C. § 1367(d)) (alterations in original). "This is specifically 'to prevent the limitations period from expiring' on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim." *Lee,* 2016 WL 749173, at *7 (quoting *Krause v. Textron Fin. Corp.,* 59 So. 3d 1085, 1091 (Fla. 2011). Therefore, "declining supplemental

jurisdiction will not bar Plaintiff under preclusion principles from reasserting [his] state claims in state court." *Espinoza v. Galardi S. Enterprises, Inc.,* No. 14-21244-CIV-GOODMAN, 2018 WL 1729757, at *12 (S.D. Fla. Apr. 10, 2018); *Mgmt. Inv'rs v. United Mine Workers of Am.,* 610 F.2d 384, 395 (6th Cir. 1979) (holding that a federal court's dismissal of state claims without prejudice is not res judicata as to adjudication in either state or federal courts).

## IX. Recommendations

Based on the foregoing, the Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment [ECF No. 123] be **GRANTED** as to Plaintiff's federal claims and that judgment be entered in favor of Defendants as to Count II (Deliberate Indifference to a Plaintiff's Safety) and Count III (Equal Protection under the Fourteenth Amendment). It is further recommended that Plaintiff's state law claims, Count I (Negligence) and Count II (Intentional Infliction of Emotional Distress, be **DISMISSED without prejudice** to Plaintiff pursuing them in state court within thirty days.

Given the extensive litigation history of this case AND the familiarity of the parties with the subject matter, the Court is shortening the time in which the parties have to file objections and responses. A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **TEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 18th day of August, 2021.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **District Court Judge Robin Rosenberg; and**

        **All Counsel of Record**